IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THEODORE S. LEHMANN, JR., )
)
      Plaintiff, )
)
v. ) Civ. No. 08-906-SLR
)
ARAMARK HEALTHCARE SUPPORT )
SERVICES, LLC, et al., )
)
      Defendants. )

---

Noel E. Primos, Esq. and William D. Fletcher, Jr., Esq., of Schmittinger & Rodriguez, Dover, Delaware. Attorneys for Plaintiff.

Kevin J. Connors, Esq., of Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, Anne E. Martinez, Esq. and William J. Delany, Esq., Philadelphia, Pennsylvania. Attorneys for Defendants.

---

**MEMORANDUM OPINION**

Dated: June 30, 2009
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Theodore S. Lehmann, Jr. ("plaintiff") instituted this employment discrimination action in the Superior Court of the State of Delaware in and for Kent County on October 24, 2008. (D.I. 1 at 4) Defendants Aramark Healthcare Support Services, LLC, Aramark Clinical Technology Services, LLC, and Aramark Management Services Limited Partnership (collectively, "defendants") removed this action to federal court on December 3, 2008 pursuant to 28 U.S.C. § 1441 on the basis that the federal district court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. (*Id.*)

In his complaint, plaintiff claims that defendants unlawfully terminated his employment in violation of: (1) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, because plaintiff was about to give information in connection with a lawsuit filed by co-worker Daniel Miller ("Miller"), and was about to testify in that lawsuit; (2) the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. §§ 710 *et seq.*, for opposing practices prohibited by the DDEA and for assisting and participating in Miller's lawsuit to enforce the DDEA; and (3) the Delaware Handicapped Persons Employment Protections Act ("DHPEPA"), 19 Del. C. §§ 720 *et seq.*, for opposing practices prohibited by the DHPEPA and for assisting and participating in Miller's lawsuit to enforce the provisions of the DHPEPA. (D.I. 1 at ¶¶ 27-38) Presently before the court is defendants' motion to dismiss for failure to state a claim.

## II. BACKGROUND[1]

Beginning in April 2003, defendants employed plaintiff[2] as an imaging technician assigned to the Milford Memorial and Kent General Hospitals. (*Id.* at ¶¶ 10-11, 14) During the period leading up to his termination, plaintiff was qualified for his position and had excellent job performance, a fact that defendants recognized with consistently positive evaluations. (*Id.* at ¶¶ 15-16) Jonathan Hill ("Hill"), defendants' front line manager, supervised plaintiff at all times relevant to this complaint. (*Id.* at ¶ 12)

On July 26, 2006, Miller, after losing his job, filed a lawsuit claiming, inter alia, discrimination and retaliation by defendants in violation of the FMLA, DDEA, and DHPEPA. (*Id.* at ¶ 17) On December 6, 2006, Miller served his initial disclosures, identifying plaintiff as a potential witness in Miller's lawsuit. (*Id.* at ¶ 19) On January 26, 2007, Miller served interrogatory answers upon defendants that contained information describing plaintiff's knowledge of Miller's complaints of employment discrimination and retaliation. (*Id.* at ¶ 20)

In March 2007, Hill contacted plaintiff to inquire whether plaintiff had been contacted by Miller's attorneys in connection with Miller's lawsuit and plaintiff replied that he had not been contacted by them. (*Id.* at ¶ 21) Hill then instructed plaintiff that, if

---

[1]Although defendants challenge many of plaintiff's factual allegations, these allegations will be taken as true for the purposes of this motion to dismiss.

[2]Defendants argue that plaintiff was employed by Aramark Management Services LP and that, although Aramark Healthcare Support Services, LLC and Aramark Clinical Technologies Services, LLC are affiliates of Aramark Management Services LP, they did not employ plaintiff and, thus, should be dismissed from the case. (D.I. 1 at 1 n.1) Because the court is granting the motion to dismiss in favor of defendants, the issue is moot.

2

Miller's attorneys contacted plaintiff regarding the case, plaintiff should immediately inform defendants' attorneys of that contact. (*Id.*) In response to this request, plaintiff stated that he would not agree to contact defendants' attorneys to inform them of a contact from Miller's attorneys and, if subpoenaed in the action, that he would "tell the truth." (*Id.*)

On April 13, 2007, defendants terminated plaintiff's employment for allegedly physically threatening Hill and making a racist comment. (*Id.* at ¶ 22) Following his termination, plaintiff signed an affidavit in support of Miller's opposition to defendants' motion for summary judgment in Miller's lawsuit. (*Id.* at ¶ 24) This affidavit was dated October 15, 2007 and filed on October 22, 2007. (D.I. 3, ex. A)

Plaintiff filed a complaint of retaliation with the Delaware Department of Labor and the Equal Employment Opportunity Commission on May 9, 2007 prior to receiving his right to sue letter. (D.I. 1, ex. A at ¶¶ 9-10) He then filed the lawsuit presently before the court.

## III. STANDARD OF REVIEW

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 554-55 (2007) (internal quotations omitted). A complaint does not need detailed factual

allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.*

> The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "[S]tating... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement a the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

*Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citations omitted).

## IV. DISCUSSION

### A. Retaliation

In his complaint, plaintiff claims that defendants terminated him in retaliation for assisting with Miller's lawsuit. (D.I. 1, ex. A at ¶ 23) Retaliation claims under the FMLA are analyzed under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Schlifke v. Trans World Entm't Corp.*, 479 F. Supp. 2d 455, 451-52 (D. Del. 2007). Retaliation claims under the DDEA and DHPEPA should also be analyzed using the same framework. *See Witcher v. Sodexho, Inc.*, 247 F. App'x 328, 329 (3d Cir. 2007) (applying *McDonnell Douglas* framework to claims of retaliation in violation of the ADEA and DDEA).[3] Under this framework, plaintiff must first establish a

---

[3]Although *Witcher* did not directly address how to analyze retaliation claims under the DHPEPA, the court will use the *McDonnell Douglas* framework in light of the parallel structure between the DDEA and the DHPEPA and the fact that both parties agreed that a *McDonnell Douglas* analysis is appropriate for the DHPEPA.

4

prima facie case of retaliation by showing: (1) plaintiff availed himself of a protected right; (2) plaintiff suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.[4] *Schlifke*, 479 F. Supp. 2d at 452.

According to defendants, plaintiff's claims must fail because plaintiff has not established the first prong of his prima facie case, i.e., plaintiff has not identified any protected activity. Similar to Title VII, under the FMLA, DDEA and DHPEPA, an employee is protected from two categories of activity. First, employers are prohibited from discharging or discriminating against any individual for opposing any practice made unlawful by that particular statute. *See* 29 U.S.C. § 2615(a)(2); 19 Del. C. §§ 711, 726. Second, employers are prohibited from discharging or discriminating against any individual for participating in legal processes under the relevant statutes. However, the FMLA anti-retaliation provisions based on participation differ in scope from the analogous DDEA and DHPEPA provisions. The DDEA and DHPEPA prohibit employers from discharging an individual "because such person **has** testified, assisted or participated in any manner" in enforcement proceedings. 19 Del. C. §§ 711, 726 (emphasis added). The FMLA gives somewhat broader protection, including "anticipated participation" in addition to actual participation, prohibiting an employer from discharging an employee because that individual:

> (1)    has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to [the FMLA];

---

[4]Because plaintiff has not shown that he availed himself of a protected right, the court need not address the second and third factors in the prima facie analysis.

>   (2)   has given, or **is about to give**, any information in connection with any inquiry or proceeding relating to any right provided under [the FMLA]; or
>
>   (3)   has testified, or **is about to testify**, in any inquiry or proceeding relating to any right provided under [the FMLA].

29 U.S.C. § 2615(b) (emphasis added).

### 1. Opposition

Plaintiff alleges that he engaged in opposition, thus availing himself of a protected right, when he "informed Hill that he would not agree to contact defendants' attorneys to inform them of a contact from Miller's attorneys" and also by stating that he "would tell the truth" if subpoenaed in Miller's lawsuit. (D.I. 1, ex. A at ¶ 21)

Although the Third Circuit Court of Appeals has declined to "define with precision the type of conduct [constituting opposition]," it has directed district courts to "analyze the message that [the plaintiff] conveyed, and not the medium of conveyance." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995). Furthermore, the Third Circuit has recognized that both formal charges of discrimination "as well as informal protests of discriminatory employment practices, including... expressing support of co-workers who have filed formal charges, constitute opposition." *Id.* (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Significantly, the Third Circuit has declared that the opposition "must not be equivocal" to constitute protected activity. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citing *Barber*, 68 F.3d at 702).

In the case at bar, defendants argue that plaintiff's two statements, that he would tell the truth if subpoenaed and would not inform defendants' attorneys if contacted by Miller's attorneys, do not constitute expressions of support because the statements are neutral, unlike the affirmative statements of support that normally qualify as opposition. *See, e.g., Washco v. Fed. Express Corp.*, 402 F. Supp. 2d 547, 555-56 (E.D. Pa. 2005) (finding that plaintiff engaged in protected opposition when she stated that her employer treated a co-worker differently than other similarly situated employees during internal racial discrimination investigation).

Plaintiff states, in conclusory fashion, that the complaint "describes a conversation between plaintiff and Hill in which plaintiff expressed his refusal to cooperate with defendants' attorneys as well as his intention to support Miller by testifying truthfully on his behalf." (D.I. 1, ex. A at ¶ 21) As pleaded, however, the facts allege only that plaintiff stated that he would tell the truth if subpoenaed, and that he would not inform defendants' attorneys of any contact from Miller's attorneys. (*Id.*) These equivocal statements contain neither an explicit nor an implicit suggestion that plaintiff intended to support Miller. *Cf. Barber*, 68 F.3d at 702 (finding that the plaintiff employee's letter neither explicitly nor implicitly alleged that age was the reason for alleged unfair employment action, and concluding that a general complaint of unfair treatment is not tantamount to illegal age discrimination).

To survive a 12(b)(6) motion to dismiss, a plaintiff must present "[f]actual allegations... [that] raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. Finding an

7

expression of support for Miller from plaintiff's stated intentions to tell the truth and not follow Hill's directive requires the court to speculate about a set of facts not pleaded. Because the *Twombly* standard requires factual allegations to surpass the threshold of mere speculation and because the case law suggests that an affirmative expression of support for Miller is required for plaintiff's statements to become protected opposition, plaintiff's claims cannot be sustained based on protected opposition.

### 2. Participation

Plaintiff further alleges that he engaged in protected activity by participating and assisting in Miller's lawsuit to enforce the provisions of the FMLA, DDEA, and DHPEPA. (*Id.* at ¶ 23) Plaintiff supports the contention that he participated in Miller's lawsuit with the following facts: (1) he was listed as a possible witness in Miller's initial disclosures and interrogatory answers; (2) in his conversation with Hill, plaintiff expressed his intention to assist Miller in his case; and (3) he did in fact sign an affidavit in support of Miller's opposition to defendants' motion for summary judgment in that lawsuit. Because only the FMLA protects anticipated participation in a proceeding, the court will address anticipated participation first.

Plaintiff's conversation with Hill regarding telling the truth and not informing defendants' attorneys of a contact from Miller's attorneys, as discussed *supra*, was neutral in content. It does not follow that, from this conversation, Hill was on notice that plaintiff would later testify or otherwise provide information in Miller's case. Plaintiff alleges that he gave information to Miller's attorneys on April 24, 2007, eleven days after his termination, and he signed an affidavit in October 2007, more than six months

after his termination, in support of Miller's case. Plaintiff fails to make any factual allegations that either of these instances of assisting in Miller's lawsuit were planned prior to his termination. In fact, plaintiff's factual allegations make it clear that he had not had any contact with Miller's attorneys as of at least March 2007 when his conversation with Hill took place.[5] (*Id.* at ¶ 21) Simply put, there are no factual allegations advanced by plaintiff that suggest that Hill or anyone else anticipated plaintiff's assistance in Miller's lawsuit.

The FMLA, DDEA, and DHPEPA all protect actual participation in a proceeding. The only fact alleged by plaintiff that could be construed as actual participation in Miller's lawsuit prior to his termination is that, in Miller's initial disclosures and answers to interrogatories, plaintiff was listed as a potential witness. (*Id.* at ¶¶ 19-20) Under the FMLA, being identified as a potential witness is not enough to constitute participation. The FMLA is "clear that to constitute participation, an employee must either make a charge, give information about a charge, or testify regarding a charge." *Felix v. Sun Microsystems, Inc.*, No. JFM-03-1304, 2004 WL 911303, at *17 (D. Md. Apr. 12, 2004). Because being listed as a potential witness does not fall into any of these three categories, such activity is outside the protective scope of the FMLA.

The case is closer for the DDEA and DHPEPA, which prohibit employers from discharging individuals "because such person has testified, assisted or participated **in**

---

[5]In response to this argument, plaintiff alleges that "there may have been occasions" in which he consulted with Miller, as opposed to his attorneys, regarding Miller's lawsuit and that this issue should be explored in discovery. It is unclear why, if any such incidents did occur, plaintiff would need discovery to explore what he said, to whom he spoke, or when he engaged in those conversations.

9

**any manner** in an investigation, proceeding, or hearing to enforce the provisions of [the DDEA or DHPEPA]." 19 Del. C. §§ 711, 726 (emphasis added). There are no state cases on point. Because the participation clauses of the DDEA and DHPEPA anti-retaliation provisions mirror that of the Title VII anti-retaliation provision, the court turns to federal case law for guidance. In *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 175 (2d Cir. 2005), the Second Circuit concluded "that Congress intended the [Title VII] anti-retaliation clause to protect a volunteer witness poised to testify in support of a co-worker's discrimination claims." The court in *Jute* emphasized, however, that the broad interpretation of the Title VII participation clause should be limited to the particular facts of that case and suggested that the more passive the employee's involvement, the less likely that involvement is protected. *See Jute*, 420 F.3d at 175 n.6. Of particular importance in that case was that the employee volunteered to testify on behalf of her co-worker and that intention was communicated to the employer. *Id.* at 175.

Here, although Miller's initial disclosures and interrogatory answers (served in December 2006 and January 2007, respectively) listed plaintiff as a potential witness, there are no allegations that **plaintiff** affirmatively expressed his intention to participate in Miller's lawsuit prior to his termination. Other than plaintiff's bare statement that he would "tell the truth," plaintiff's role in Miller's lawsuit at the time plaintiff was terminated was entirely passive. Because plaintiff engaged in neither the anticipated participation envisioned by the FMLA, nor the actual participation protected by the FMLA, DDEA and

10

DHPEPA, plaintiff's claims cannot be sustained based on protected participation. Thus, plaintiff fails to make out a prima facie case for retaliation.

## V. CONCLUSION

For the reasons stated, defendants' motion to dismiss is granted. An appropriate order shall issue.